STATE, Respondent, v. PASSARELLI, Appellant.

*No. 85. Submitted May 2, 1972.—Decided June 6, 1972.*
(Also reported in 197 N. W. 2d 740.)

The defendant, William Arthur Passarelli, was charged with reckless driving, contrary to sec. 346.62 (1), Stats. On November 21, 1969, he was found guilty of reckless driving by County Judge Louis J. Ceci. The conviction was appealed to the circuit court. On July 16, 1970, the conviction was affirmed by Circuit Judge Herbert J. Steffes. From the circuit court order affirming the county court conviction, defendant appeals.

The cause was submitted for the appellant on the brief of *Walter J. Steininger* of Milwaukee, and for the respondent on the brief of *Robert W. Warren,* attorney general, and *E. Gordon Young,* assistant attorney general.

Robert W. Hansen, J. The testimony of the arresting officer was that, at about 5:55 a. m. on the morning of the arrest, August 24, 1969, he was parked at a filling station in the 2300 block of West Wisconsin Avenue.

He heard the squealing of automobile tires in the vicinity of 25th and West Wisconsin, and went to investigate.

He observed two automobiles speeding west on Wisconsin Avenue, the car driven by defendant pursuing another.

The officer turned on his flasher and siren and chased the two speeding cars.

The two cars turned left onto North 25th Street, the officer estimating defendant to be then traveling about 40 miles per hour.

The two cars turned left at West Clybourn, the officer estimating defendant's speed then about 70 miles per hour.

The two cars then turned left onto North 19th Street, then right onto West Wells and were at North 18th Street when both stopped. The police officer was then about a block and a half behind them.

As the police car approached, the officer testified he saw the defendant pounding on the window and top of the other car.

During the chase the defendant's car drove through arterial stop signs at 25th and West Clybourn Streets and at 19th and West Wells Streets. Also, the defendant drove through a red light at an automatic traffic signal at 19th and West Wisconsin Avenue without stopping. While traffic was light, there were cars on the streets and pedestrians on the sidewalks.

To this overwhelming proof of clearly reckless driving, the defendant interposes two defenses, both unique and neither with any weight or substance.

The first of the two defenses is that the defendant was an experienced stock-car racer so that his driving at high speeds through stop signs and red lights involved less risk to others than usual. The statute involved defines the degree of negligence required for a finding of reckless driving as that ". . . which the person should realize creates a situation of unreasonable risk and high probability of serious property damage or of death or great bodily harm to himself or another." (Sec. 346.62 (3), Stats.) The defense claim is that the defendant, as a skilled auto-race driver, could better handle his car at high speeds and going through stop signs than an ordinary motorist.

The state counters that two cars were involved in the race and chase over near downtown streets, and the defendant could not know the driving ability or racing experience of the car he was seeking to curb. True enough, but not here needed to sustain conviction.

Even an Indianapolis-500 veteran like Bobby Unser or Grand Prix speedster like Jackie Stewart knows that there is an inescapable element of risk in driving at high speeds even over racetrack surfaces. Tire blowouts and skids into outside walls can cause injuries or death. It is difficult to believe that they would deem city streets an acceptable locale for driving at track speeds or without regard for arterial stops and traffic signals.

If they were to, the stern answer of the law is that the racetrack driver gets no license to practice or perform on city streets. Deliberate driving at high speeds and through traffic control signals, under the circumstances here present, is reckless driving regardless of the competence or experience of the person behind the wheel. Regard for the rights and person of other drivers and pedestrians requires the holding that racetrack drivers, when they leave the track, are bound to observe the same speed limits and traffic signals as all other motorists. There is no double or adjustable standard as to what is required or as to what constitutes reckless driving. Even the most skilled marksman is to do his pointing and aiming while at the hunting grounds or rifle range, and not while on city streets or in public places.

The second equally imaginative and equally unsound defense is that the defendant did not hear the siren or see the red light and chased the other car to interrupt a "kidnapping." The trial court found ". . . his testimony to be unbelievable. . . ." This stands as a finding of fact, credibility being for the trier of fact to determine. (*See: Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101.)

What the defendant sought and seeks to rely upon is a story told to him by his brother about the brother having visited a girl's apartment earlier in the evening only to be joined by a male visitor who refused to leave. When the extra male refused to leave, the brother called

police. When the police arrived, the girl and the other fellow had left. The officer investigated, noted that the brother had been drinking and concluded that there had been no "kidnapping." The landlady told the officer the brother had been disorderly and asked that he be removed from the building. The brother left.

At about 4:30 a. m., the brother told the defendant what had happened earlier and they went looking for the girl, the man with whom she had left, or both. They found them parked in front of the girl's apartment building. There started the chase that ended with the two brothers pounding on the doors and top of the car they had finally curbed. The trial court found nothing in the reason given for the chase to warrant a claim of a "kidnapping" having occurred. Instead it found, and properly so, that the defendant, by his actions, had created ". . . a situation of unreasonable risk and a high probability of injury to the police officers, to himself, to some pedestrians that might have been on the road. . . ."

The reasons the two brothers gave for chasing the car, with the girl and the fellow she left with at least three and a half hours earlier, are set forth because defendant claims the trial court improperly admitted hearsay evidence about the landlady complaining to the police officer that the brother had been creating a disturbance in the hall of the apartment building after the girl left with the other fellow. It is true this testimony related, not to the driving at all, but to what the brother had done three hours before the mad chase through city streets took place. However, it was defendant who raised the claim that what happened then justified how he drove later on. If the court was required to listen at all to the claim that a girl had been "kidnapped" at the earlier time, it was entitled to hear all about what happened then. If the girl's leaving with the other fellow was at all material, it was made so by defense raised. The defendant cannot

assert a defense based on what happened at the girl's apartment and then complain that testimony was admitted into evidence as to what did then occur. Even if held to be error, it certainly would not meet the test for errors requiring reversal that ". . . but for the error there probably would have been a different result. . . ." (*Bentzler v. Braun* (1967), 34 Wis. 2d 362, 374, fn. 13, 149 N. W. 2d 626.) The defendant was convicted of reckless driving for the way he drove his car over city streets, not at all on the basis of what his brother or the landlady told the police officer hours before the reckless driving began.

*By the Court.*—Order affirmed.